No. 25-11168

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

TODD FRANKFORT; CURTIS GOODBAN,
*Plaintiffs-Appellants*,

v.

METROPOLIS TECHNOLOGIES, INCORPORATED,
*Defendant-Appellee*.

From the United States District Court for the
Northern District of Texas
Cause No. 3:24-CV-02283-L, Hon. Sam A. Lindsay, presiding.

---

BRIEF OF APPELLANTS

---

VARTABEDIAN HESTER &
HAYNES LLP

Craig A. Haynes
Daniella P. Main
2200 Ross Avenue, Suite 4600E
Dallas, TX 75201
Telephone: (469) 654-1632

Christian G. Sweeney
301 Commerce Street, Suite 2200
Fort Worth, TX 76102
Telephone: (817) 214-4990

THE LANIER LAW FIRM, P.C.

Kyle Schnitzer
10940 W. Sam Houston Pkwy N.,
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

<u>Case Number and Style</u>: No. 25-11168; *Todd Frankfort and Curtis Goodban, individually and on behalf of all others similarly situated, v. Metropolis Technologies, Inc.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### I.    **Plaintiffs-Appellants:**

Todd Frankfurt
Curtis Goodban[1]

**Appellate Counsel**:
Kyle Schnitzer
    Texas Bar No. 24083811
    Kyle.schnitzer@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
Telephone: (713) 659-5200

**Trial and Appellate Counsel:**
Craig A. Haynes
    Texas Bar No. 09284020
    craig.haynes@vhh.law
Daniella P. Main
    Texas Bar No. 24120235
    daniella.main@vhh.law
**VARTABEDIAN HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 4600E
Dallas, TX 75201

---

[1] Sarina Gutierrez was named as a plaintiff in Plaintiffs' Class Action Complaint but is no longer pursuing her claims. ROA.9. If Plaintiffs are successful on appeal, Plaintiffs will amend their complaint to remove Ms. Gutierrez.

Tel.: (469) 654-1632

Christian G. Sweeney
  Texas Bar No. 24121159
  christian.sweeney@vhh.law
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, TX 76102

**Additional Trial Counsel**:
Robert C. Vartabedian
  Texas Bar No. 24053534
  rob.vartabedian@vhh.law
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, TX 76102

W. Mark Lanier
  Texas Bar No. 11934600
  mark.lanier@lanierlawfirm.com
Alfred Mackzenie
  Texas Bar No. 12761550
  alfred.mackenzie@lanierlawfirm.com
Kevin P. Parker
  Texas Bar No. 15494020
  kevin.parker@lanierlawfirm.com
Alex J. Brown
  Texas Bar No. 24026964
  alex.brown@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
Telephone: (713) 659-5200

**II.** **Defendant-Appellee:**

Metropolis Technologies, Inc.

**Appellate Counsel:**
David S. Coale
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201

**Trial and Appellate Counsel:**
Suyash Agrawal
Christopher M. Walling
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, IL 60602

**Additional Trial Counsel**:
Edward J. Dennis
Christopher J. Schwegmann
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201

Paul J. Berks
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, IL 60602

> */s/ Daniella P. Main*
> Daniella P. Main
> **VARTABEDIAN HESTER & HAYNES LLP**

iv

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents a narrow set of legal issues, resolved entirely on the pleadings, involving the application of Rule 12(b)(6) and the plain text of the Fair Debt Collection Practices Act. The questions on appeal can accordingly be resolved through straightforward application of established pleading standards and statutory interpretation. While oral argument is unlikely to materially assist the Court, Plaintiffs respectfully request an opportunity to appear if the Court feels otherwise.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ..................................................... v

TABLE OF CONTENTS ................................................................................ vi

TABLE OF AUTHORITIES ........................................................................... viii

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUES ....................................................................... 2

STATEMENT OF THE CASE .......................................................................... 4

I.    Factual Background ........................................................................ 4

    A.  Metropolis uses AI-technology to impose Violation Fines
    to generate its revenue. ............................................................ 4

    B.  Metropolis intimidates consumers into paying the
    violation fines through threatening mailings. .......................... 6

    C.  Plaintiffs represent a class of consumers targeted by
    Metropolis's predatory Scheme. ................................................ 7

II.   Procedural History ......................................................................... 8

SUMMARY OF THE ARGUMENT ..................................................................... 9

STANDARD OF REVIEW .............................................................................. 12

ARGUMENT ............................................................................................. 13

I.    Plaintiffs may plead alternative theories, and the district
    court erred by using the "originator" exclusion to dismiss
    both. ............................................................................................ 13

II.   Plaintiffs adequately alleged that Metropolis's principal
    purpose is the collection of debts. .............................................. 14

    A.  Metropolis's principal purpose is debt collection. ................... 15

B.  The district court committed error by applying the "originator" exclusion, which does not apply to debts that are owned by the debt collector..............................................17

III.  In the alternative, Plaintiffs adequately alleged that Metropolis regularly collects debts owed to others........................20

    A.  Metropolis collects debts owed to third-party lot owners........20

    B.  The "originator" exclusion does not defeat this alternative theory because such debts would not be "originated" by Metropolis.......................................................24

    C.  At a minimum, the district court should have granted leave to amend. ...................................................................28

IV.  Plaintiffs alleged numerous violations of the FDCPA...................29

    A.  Metropolis collects amounts not authorized by agreement or permitted by law. ............................................................29

    B.  Metropolis uses false and coercive threats to induce payment. ..............................................................................34

CONCLUSION .................................................................................37

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Alexander v. Carrington Mortg. Servs., LLC,*
  23 F.4th 370 (4th Cir. 2022) ............................................... 29

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................ 12

*Atrium Med. Ctr., LP v. Hous. Red C LLC,*
  595 S.W.3d 188 (Tex. 2020) ............................................... 31

*Ballard v. Equifax Check Servs.,*
  158 F. Supp. 2d 1163 (E.D. Cal. 2001) ............................... 33

*Barbato v. Greystone All., LLC,*
  916 F.3d 260 (3d Cir. 2019) ............................................... 16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................ 12

*BMG Direct Mktg., Inc. v. Peake,*
  178 S.W.3d 763 (Tex. 2005) .......................................... 30, 31

*Cleary v. Hertz Rent-A-Car,*
  No. CIV.A. 13-1824, 2013 WL 3915217 (E.D. Pa. July 29,
  2013) ..................................................................................... 22

*Davidson v. Cap. One Bank (USA), N.A.,*
  797 F.3d 1309 (11th Cir. 2015) .......................................... 18

*Ditty v. CheckRite, Ltd.,*
  973 F. Supp. 1320 (D. Utah 1997) ...................................... 33

*Flores v. Millennium Interests, Ltd.,*
  185 S.W.3d 427 (Tex. 2005) .......................................... 31, 32

*Franklin v. Parking Revenue Recovery Servs., Inc.,*
  832 F.3d 741 (7th Cir. 2016) .......................................... 21, 29

*Glover v. Ocwen Loan Servicing, LLC,*
  127 F.4th 1278 (11th Cir. 2025) ......................................... 29

*Goswami v. Am. Collections Enter., Inc.*,
377 F.3d 488 (5th Cir. 2004) .............................................................. 34

*In re Great Lakes Dredge & Dock Co. LLC*,
624 F.3d 201 (5th Cir. 2010) .............................................................. 12

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .............................................................. 28

*Griffin v. O'Brien, Wexler, & Assocs., LLC*,
680 F. Supp. 3d 772 (E.D. Tex. 2023) ................................................ 12

*Hansen v. Ticket Track, Inc.*,
280 F. Supp. 2d 1196 (W.D. Wash. 2003) .................................... 21, 33

*J&J Sports Prods., Inc. v. Sw. Tex. Entm't, Inc.*,
No. DR-17-CV-045-AM-VRG, 2019 WL 1313474 (W.D.
Tex. Jan. 23, 2019) ............................................................................ 23

*Mitchell v. LVNV Funding, LLC*,
No. 2:12-CV-523-TLS, 2017 WL 6406594 (N.D. Ind.
Dec. 15, 2017) .................................................................................... 17

*Phillips v. Phillips*,
820 S.W.2d 785 (Tex. 1991) .......................................................... 30, 31

*Pollice v. Nat'l Tax Funding, LP*,
225 F.3d 379 (3d Cir. 2000) ............................................................... 33

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .............................................................. 12

*Scanlan v. Tex. A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) .............................................................. 23

*Stewart v. Alonzo*,
No. C-08-347, 2009 WL 174938 (S.D. Tex. Jan. 26, 2009) ................ 17

*Tex. Truck Parts & Tire, Inc. v. United States*,
118 F.4th 687 (5th Cir. 2024) ............................................................ 27

*Thompson v. Goetzmann*,
337 F.3d 489 (5th Cir. 2003) .............................................................. 25

ix

*United States v. Lauderdale County*,
  914 F.3d 960 (5th Cir. 2019) ...................................................... 25, 26

*Williams v. Santander Consumer USA Holdings, Inc.*,
  No. 3:21-CV-3176-D, 2022 WL 562896 (N.D. Tex. Feb. 24,
  2022) ................................................................................ 18, 22

## Statutes

5 U.S.C. § 1692e(5) ................................................................. 34

5 U.S.C. § 1692f(6)(A) ............................................................. 34

15 U.S.C. § 1692a ............................................................ *passim*

15 U.S.C. § 1692e .......................................................... 33, 34, 35, 37

15 U.S.C. § 1692f ............................................................. *passim*

15 U.S.C. § 1692k(d) ................................................................. 1

28 U.S.C. § 1291 ....................................................................... 1

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. § 1332 ................................................................... 1, 9

28 U.S.C. § 1367(a) ................................................................. 1

## Rules

Fed. R. App. P. 3 .................................................................... 1

Fed. R. Civ. P. 4(a)(1)(A) ......................................................... 13

Fed. R. Civ. P. 8(d) ................................................................ 13

Fed. R. Civ. P. Rule 12(b)(6) ............................................... *passim*

## Other Authorities

*Arrange*, CAMBRIDGE DICTIONARY,
  https://dictionary.cambridge.org/dictionary/english/
  arrange ........................................................................ 25

*Originate*, CAMBRIDGE DICTIONARY,
https://dictionary.cambridge.org/dictionary/english/origina
te#google_vignette ................................................................. 25

*Origination*, INVESTOPEDIA (Dec. 29, 2024),
https://www.investopedia.com/terms/o/origination.asp; ..................... 26

National Consumer Law Center, Fair Debt Collection
Practices Act § 4.8.8 (11th ed. 2026) ................................................. 26

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this action on several grounds. *First*, the Fair Debt Collection Practices Act confers federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). *Second*, the district court had original jurisdiction over the state-law class claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the putative class exceeds 100 members, the amount in controversy exceeds $5,000,000 in the aggregate, and minimal diversity exists between at least one class member and Metropolis. *Third*, the court also had supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a).

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The district court entered a final judgment on September 16, 2025, that dismissed the Federal Debt Collection Practices Act ("FDCPA") claim with prejudice and dismissed the remaining state-law claims without prejudice by declining to exercise supplemental jurisdiction, without addressing Plaintiffs' pleaded CAFA basis for original jurisdiction over those claims. ROA.294–300. Plaintiffs timely filed a notice of appeal on October 14, 2025, under Fed. R. App. P. 3 and 4(a)(1)(A). ROA.301.

1

## STATEMENT OF THE ISSUES

1.   This appeal primarily concerns whether Plaintiffs plausibly alleged that Metropolis qualifies as a "debt collector" under the Fair Debt Collection Practices Act. The FDCPA defines "debt collector" disjunctively, and Plaintiffs alleged in the alternative that Metropolis would qualify under either prong.

   a. First, Plaintiffs alleged that Metropolis's business model depends on the collection of Violation Fines that Metropolis claims to own and collect on its own behalf, such that Metropolis is a debt collector" under the FDCPA's "principal purpose" definition, which covers any business whose principal purpose is the collection of debts. The district court nevertheless dismissed the claim by invoking the FDCPA's "originator" exclusion—an exclusion that applies only to persons collecting debts "owed or due another"—even though Metropolis consistently asserted that the debts at issue were owed to itself. Did the district court err by applying the originator exclusion to Plaintiffs' principal-purpose theory?

   b. Second, Plaintiffs alleged in the alternative that Metropolis qualifies as a debt collector because it regularly collects debts

2

owed to others. Plaintiffs alleged that Metropolis operates parking facilities on behalf of lot owners and collects unpaid charges on their behalf, while lacking access to the contractual and ownership facts necessary to plead more granular detail without discovery. The district court dismissed this theory by conclusively determining that Metropolis "originated" the debts based on facts outside of the pleadings, thereby applying the same exclusion at the pleading stage. Did the district court err by resolving disputed factual issues concerning origination on a Rule 12(b)(6) motion to apply the "originator" exclusion as a matter of law?

2. Ultimately, the district court dismissed Plaintiffs' FDCPA claim with prejudice, even though the statutory "originator" theory purportedly justifying that dismissal was not advanced by Metropolis and not briefed by either party. Did the district court abuse its discretion by dismissing the FDCPA claim with prejudice and denying leave to amend rather than allowing amendment to cure any perceived pleading deficiencies?

**STATEMENT OF THE CASE**

## I.    Factual Background

This case challenges Metropolis's "violation fine scheme" (the "Scheme"), under which Metropolis assesses unlawful penalties for alleged parking violations and then collects those penalties through coercive practices. ROA.9.

### A.    Metropolis uses AI-technology to impose Violation Fines to generate its revenue.

Metropolis markets an "AI-driven," gate-less parking to create a "drive-in, drive-out" experience. ROA.9–10. Rather than rely on gates or attendants to ensure consumers pay for parking, Metropolis installs its video monitoring system, which instead tracks and documents a vehicle's license plate as it enters and exits the building. ROA.17. Before leaving the garage or parking lot, patrons must notice the signage, scan a QR code, and complete payment on smart device. ROA.10. If they do not, no on-site notice is provided. *See* ROA.10–11.

After the vehicle has departed, Metropolis mails a "Notice of Parking Violation" ("Notice") to the consumer's home in which it demands payment of the fare *plus* an additional "Violation Fine." ROA.10. The amount of the Violation Fine is never disclosed in advance. ROA.10. It is

imposed in an amount arbitrarily chosen after-the-fact by Metropolis. ROA.17.

Violation Fines are key to Metropolis's multi-billion-dollar business, as is the secrecy surrounding them. ROA.9. By removing gates and attendants, using inconspicuous QR-code signage, and concealing information regarding the amount of Violation Fines, Metropolis practically *encourages* nonpayment. ROA.17. And in doing so, it generates substantially more revenue for Metropolis and parking lot facility owners than they would receive using a traditional gate or attendant model. ROA.17–18.

The example below illustrates the perverse incentive Metropolis's system creates. This table, which was included in Plaintiffs' original complaint, shows the estimated revenue for a garage that has 3,000 daily visitors under two scenarios: a scenario with a normal entry gate system requiring 100% compliance, and a second scenario using Metropolis's gateless system, assuming a 20% nonpayment rate, a $70 violation fine (like the one Plaintiff Goodban received), and a 90% Violation Fine collection rate. ROA.18.

|  | Traditional Entry Gate System | Metropolis System |
|---|---|---|
| Cars per Day | 3,000 | 3,000 |
| Paying Customers | 3,000 | 2,400 |
| Non-Paying Customers | 0 | 600 |
| Revenue for $15 Parking Charge | $45,000 | $36,000 |
| Number of Customers Subject to Violation Fine | 0 | 600 |
| Number of Customers Who Pay Violation Fine | 0 | 540 |
| Violation Fine Revenue | 0 | $37,800 |
| **Total Revenue** | **$45,000** | **$73,800** |

Even using these conservative assumptions, Metropolis's system generates *164%* of the revenue that a typical gate-entry system generates. ROA.18. And *more than half* comes from Violation Fines alone. ROA.18.

### B.　Metropolis intimidates consumers into paying the violation fines through threatening mailings.

Metropolis doesn't just impose baseless and exorbitant Violation Fines—it coerces consumers into paying these inflated amounts. ROA.18.

Inside the Notices, Metropolis threatens consumers with escalating consequences if payment is not made, including "additional fees," "future ticketing," and "booting and/or towing," all "at the sole discretion of Metropolis." ROA.19.

These threats are made despite Metropolis's lack of legal authority to impose additional penalties or seize vehicles. ROA.19. The threatened escalation is a central feature of the Scheme, designed to coerce payment of the Violation Fine through fear of compounding consequences. *See* ROA.19.

### C.     Plaintiffs represent a class of consumers targeted by Metropolis's predatory Scheme.

Plaintiffs Todd Frankfort and Curtis Goodban represent a proposed class who were subjected to this Scheme. *See* ROA.13–16.

Plaintiff Goodban parked at 500 North Akard Street in Dallas. ROA.16. After a 16-minute stay and an unpaid $5 fare, Metropolis mailed a Notice to Goodban's home, alleging he owed the fare plus an extra $70.25 Violation Fine—which is *fourteen times* the original charge. ROA.19, 35.

Plaintiff Frankfort has a similar story. Frankfort parked at the garage for the Texas Women's Hospital, located at 7600 Fannin Street in Houston. ROA.18. For an unpaid $9 parking fare, Metropolis mailed him

7

a Notice demanding payment of the fare plus a $30.25 Violation Fine. ROA.18.

Per Metropolis's usual practice, the Notices—which were mailed to Plaintiffs' home addresses with images of their vehicles—warned that failure to pay could result in *additional* fees, *future* ticketing, and the *booting or towing* of Plaintiffs' vehicles at Metropolis's "sole discretion." ROA.19, 35, 155. Fearing escalating charges and the loss of their vehicles, both Plaintiffs paid the amounts demanded.

## II.   Procedural History

Plaintiffs brought a putative class action asserting a federal claim under the Fair Debt Collection Practices Act and state-law claims under the Texas Debt Collection Act and the Texas Deceptive Trade Practices Consumer Protection Act, seeking damages and injunctive relief to halt the Scheme. *See generally* ROA.9–39.

Metropolis moved to dismiss under Rule 12(b)(6). ROA.56–104. In its motion, Metropolis did not seek dismissal with prejudice or argue that amendment would be futile. *See generally id.* The magistrate judge recommended dismissal of the federal Fair Debt Collection Practices Act claim while simultaneously recommending granting leave to amend. ROA.238–74.

8

The district court, however, charted a narrower path with harsher consequences: it dismissed the FDCPA claim with prejudice on an atextual "originator" theory that was not briefed by either party. ROA.294–300. And although Plaintiffs independently invoked federal jurisdiction over their state-law class claims under the Class Action Fairness Act, the district court declined to address CAFA and dismissed those claims based on a purported refusal to exercise supplemental jurisdiction, resulting in the dismissal of all claims from federal court. ROA.12, 297–98. The court then denied leave to amend *as futile* and entered final judgment. ROA.294, 296, 300. Plaintiffs timely appealed.[2] ROA.301.

## SUMMARY OF THE ARGUMENT

Because the case was dismissed at the Rule 12(b)(6) stage, the sole question before the district court was whether Plaintiffs plausibly alleged a claim under the FDCPA. That inquiry begins with whether Metropolis qualifies as a "debt collector" under the statute. The FDCPA defines "debt collector" in two alternative ways, and Plaintiffs adequately alleged both.

---

[2] Although Plaintiffs believe that the district court's failure to address CAFA jurisdiction over their state-law claims was error, Plaintiffs have since re-filed their state-law claims in Texas state court. This appeal thus only challenges the dismissal of Plaintiffs' FDCPA claim. *See* Cause No. 2025-88494 in the 133rd Judicial District Court in Harris County, Texas.

*First*, the FDCPA covers any business whose principal purpose is collecting debts. Here, Plaintiffs plausibly alleged that Metropolis's business model primarily depends on post-parking debt collection via the imposition and collection of Violation Fines that Metropolis claims to own and collects on its own behalf.

*Second*, the FDCPA also covers businesses who regularly collect debts owed to another. Plaintiffs met their burden by alternatively alleging that Metropolis operates parking facilities on behalf of lot owners and collects unpaid parking charges arising from implied parking agreements between parkers and those owners.

The district court nevertheless dismissed Plaintiffs' FDCPA claim with prejudice by invoking the FDCPA's "originator" exclusion—an exclusion that Metropolis did not move on and that neither party briefed. That exclusion applies only to persons collecting debts "owed … another," yet Metropolis has maintained that the debts at issue were owed to *itself*. Despite that, the district court applied the originator exclusion to Plaintiffs' principal-purpose theory—where it has no application. And the district court also erroneously applied the exclusion to Plaintiffs' alternative theory by conclusively deeming Metropolis the "originator" of the debt. To do so, the court impermissibly resolved numerous factual

10

issues at the Rule 12(b)(6) stage. Finally, compounding the error, the district court denied leave to amend and dismissed the FDCPA claim *with prejudice* based on this unbriefed and atextual rationale.

Plaintiffs also plausibly alleged substantive FDCPA violations. Metropolis's collection of Violation Fines violates the FDCPA because the Violation Fines are amounts not "expressly authorized" by any agreement nor are they permitted by law. Plaintiffs also alleged that Metropolis used coercive collection tactics by threatening *additional* fees, *future* "tickets," and the *seizure* of Plaintiffs' vehicle if Plaintiffs did not pay the unlawful Violation Fines. These allegations also state straightforward violations of the FDCPA. The district court, however, never addressed these allegations, having short-circuited the analysis by dismissing the case under the inapplicable "originator" exclusion.

Because Plaintiffs plausibly alleged that Metropolis is a debt collector under the FDCPA and plausibly alleged multiple statutory violations, the district court's dismissal with prejudice was erroneous. At a minimum, Plaintiffs were entitled to proceed past the pleading stage or to amend their complaint to address any perceived deficiencies. The judgment should be reversed.

## STANDARD OF REVIEW

"To plead a viable FDCPA claim, [a plaintiff] must allege that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 782 (E.D. Tex. 2023).

At the Rule 12(b)(6) stage, Plaintiffs' Complaint must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating those facts, a court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming v. United States*, 281 F.3d 158, 161–62 (5th Cir. 2001) (quotation omitted).

## ARGUMENT

This appeal turns on whether Plaintiffs plausibly alleged that Metropolis qualifies as a "debt collector" under the Fair Debt Collection Practices Act and plausibly alleged violations of that statute.[3] The FDCPA defines "debt collector" in two independent, alternative ways. Plaintiffs pleaded both theories. The following sections address each definition in turn, explain how the district misapplied the "originator" exclusion, and then describe how Plaintiffs plausibly alleged substantive FDCPA violations.

**I.  Plaintiffs may plead alternative theories, and the district court erred by using the "originator" exclusion to dismiss both.**

Rule 8 permits plaintiffs to plead alternative theories or even inconsistent ones. Fed. R. Civ. P. 8(d)(2)-(3). Plaintiffs did just that: one theory alleges Metropolis is a debt collector because its principal purpose is debt collection; the other alleges Metropolis regularly collects debts owed to lot owners. *See* ROA.9–10, 12. And Plaintiffs alleged these alternative theories precisely because key facts about lot ownership, origination, and the contractual arrangements between Metropolis and

---

[3] No party disputed in the district court that Plaintiffs adequately alleged they were the objects of collection activity arising from a consumer debt: demands for payment of unpaid parking charges incurred for personal use. *See* 15 U.S.C. § 1692a(5).

13

the lot owners are uniquely within Metropolis's control and can only be learned through discovery.

Yet the district court improperly collapsed these distinct theories and applied the "originator" exclusion across the board. ROA.295–96. Plaintiffs were not required in their original complaint to choose between theories or conclusively prove ownership/origination of debts across all parking facilities where Metropolis operates. They were required only to plausibly allege that Metropolis qualifies as a debt collector under at least one definition Congress provided. They did so. Dismissal of their FDCPA claim with prejudice was therefore improper.

## II.    Plaintiffs adequately alleged that Metropolis's principal purpose is the collection of debts.

The FDCPA first defines "debt collector" to include "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts." 15 U.S.C. § 1692a(6) (emphasis added). Plaintiffs plausibly alleged that Metropolis satisfies this definition by alleging Metropolis derives revenue primarily from post-parking demands for Violations Fines that Metropolis claims as its own debts, rather than from collecting fares for real-time parking transactions. *See* ROA.17–18. The district court erroneously rejected these allegations by invoking a statutory exclusion

14

that does not apply to Plaintiffs' principal-purpose theory or to Metropolis's own characterization of the debts.

### A.    Metropolis's principal purpose is debt collection.

Plaintiffs alleged that Metropolis's business model is designed to generate revenue primarily through post-parking debt collection rather than through the collection of parking fares. Metropolis operates gate-less parking facilities that eliminate attendants, kiosks, and exit controls, relying instead on small, QR-code signage that requires patrons to notice the sign, possess a charged smartphone, scan the code, and complete payment before leaving. ROA.9–10, 16–18. Unlike traditional parking garages that use gates, attendants, or kiosks that prevent vehicles from exiting without paying, Metropolis deliberately removes those controls. ROA.9, 16–18.

By shifting compliance to inconspicuous, QR-code–based self-payment and allowing vehicles to leave without payment verification, Metropolis does not forgo revenue. It creates it. Nonpayment triggers a mailed demand for the unpaid fare *plus* a substantially larger Violation Fine, allowing Metropolis to transform a missed payment into a vastly inflated post-parking debt. *Id.*

The economic engine of Metropolis's business model is the Violation Fine. Unlike a parking fare, which is fixed, the Violation Fine is imposed only after the parking transaction has ended and often dwarfs the original fare. Plaintiffs alleged that Violation Fines regularly exceed the underlying parking charge by several multiples—including fines up to fourteen times the posted rate as in Plaintiff Goodban's case. ROA.16, 19.

Plaintiffs quantified the resulting revenue structure using conservative assumptions. Under Metropolis's model, a garage with 3,000 daily visitors generates approximately 164% of the revenue of a traditional gated facility. ROA.18. More than half of that revenue is derived not from parking fees, but from Violation Fines alone. ROA.18. In other words, the majority of Metropolis's revenue is generated by the unilateral imposition and collection of Violation Fines.

Those allegations support a straightforward inference: Metropolis's profitability and business model primarily depends on the regular creation and collection of Violation Fines, i.e., debts. A business whose revenues are predominantly derived from collecting unilaterally imposed debts like the Violation Fines plausibly has as its principal purpose the collection of debts under the FDCPA. *See Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019) ("[A]n entity that has the 'collection of

16

any debts' as its 'most important' 'aim' is a debt collector under this definition.").

At the pleading stage, Plaintiffs were required only to allege facts supporting a reasonable inference that debt collection is Metropolis's principal purpose. They have done so here. *See, e.g.*, *Stewart v. Alonzo*, No. C-08-347, 2009 WL 174938, at *2 (S.D. Tex. Jan. 26, 2009) (denying motion to dismiss because "a question of fact exists as to whether [defendant] is a 'debt collector' under the FDCPA"); *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 WL 6406594, at *6 (N.D. Ind. Dec. 15, 2017) (concluding that defendant business's principal purpose is a question of fact).

**B. The district court committed error by applying the "originator" exclusion, which does not apply to debts that are owned by the debt collector.**

Rather than assess whether Plaintiffs plausibly alleged that Metropolis's principal purpose was debt collection, the district court dismissed the FDCPA claim by invoking the "originator" exclusion in 15 U.S.C. § 1692a(6)(F)(ii), reasoning that the alleged debts "originated with Defendant." ROA.295. That holding rests on a misapplication of the text of the FDCPA.

17

Section 1692a(6)(F) does not create a free-standing "originator" safe harbor. By its own terms, the exclusions in Section 1692a(6)(F) apply only to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due **another**." *Id.* § 1692a(6)(F) (emphasis added). If a defendant is not collecting a debt "owed or due another," the listed exclusions do not apply. *See, e.g.*, *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1315 n.6 (11th Cir. 2015) ("[Section 1692a(6)(F)(iii)] cannot be read, either directly or indirectly, to apply to any person collecting or attempting to collect on a defaulted debt owed or due to *him*."); *cf. Williams v. Santander Consumer USA Holdings, Inc.*, No. 3:21-CV-3176-D, 2022 WL 562896, at *4 (N.D. Tex. Feb. 24, 2022) (acknowledging that the exclusions in § 1692a(6)(F) only apply to the "regularly collects" debts "owed or due another" prong).

Here, Plaintiffs alleged that Metropolis is collecting debts on its own behalf. ROA.18 ("Metropolis' system intentionally encourages minor technical nonpayment or underpayments of garage parking fees such that a large arbitrary and unauthorized Violation Fine can be threatened and collected from a significant portion of its customers."). And Metropolis itself has consistently taken the position that it is collecting its own debts—not debts owed to third parties. ROA.74–75. For example,

18

in its reply to its motion to dismiss, Metropolis argued that the FDCPA's second prong covers only "third party debt collection agents" and does not encompass "those who seek only to collect for themselves," and that Metropolis "is the latter." ROA.229. It also acknowledged that the Complaint alleges parkers owe fees and fines *to Metropolis*, which Metropolis then attempts to collect. ROA.229 ("Because Metropolis is collecting debts owed to it, it is not a debt collector under the statute.").

Unsurprisingly, Metropolis did not move to dismiss on the theory adopted by the district court. *See* ROA.58–104. Because Metropolis's briefing proceeded from the premise that it was collecting debts owed to itself, it had no reason to argue—and did not argue—that the "originator" exclusion could apply to debts it claimed to own since the exclusions in § 1692a(6)(F) apply only to persons collecting debts "owed … another." The parties therefore did not brief, and Plaintiffs were not afforded an opportunity to address, the district court's application of § 1692a(6)(F)(ii) to debts purportedly owed to Metropolis.

In short, Plaintiffs' allegations and Metropolis's own statements make clear that the originator exclusion in § 1692a(6)(F)(ii) is inapplicable to Plaintiffs' principal-purpose theory. An exclusion limited to persons collecting debts "owed … another" cannot be invoked by a

defendant who insists the debts are owed to itself. The district court nevertheless applied the exclusion anyway, effectively reading the "owed or due another" limitation out of § 1962a(6)(F). ROA.295–96. That was error. As a result, the district court wrongly dismissed Plaintiffs' claim that was based on the theory that Metropolis's principal purpose was collecting debts on its own behalf.

## III. In the alternative, Plaintiffs adequately alleged that Metropolis regularly collects debts owed to others.

As stated above, the FDCPA also defines a "debt collector" as any person who "*regularly collects* or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another.*" 15 U.S.C. § 1692a(6) (emphasis added). Plaintiffs plausibly alleged in the alternative that Metropolis falls within this definition, and the district court committed error by resolving factual disputes against Plaintiffs at the pleading stage to apply the originator exclusion to this alternative theory.

### A. Metropolis collects debts owed to third-party lot owners.

Plaintiffs have alleged that Metropolis "owns *or partners with entities and persons* that own, manage, or otherwise control parking facilities," and that Metropolis operates garages on behalf of owners to maximize revenue. ROA.10, 17. Those allegations support a

20

commonsense inference that Metropolis is collecting debts owed to another.

Plaintiffs do not dispute that, by parking in a private facility, a consumer enters into some form of implied parking arrangement—parking in exchange for payment. *See Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016) (stating that the act of parking in a lot can create a contract). What is not established by the pleadings, however, is who the counterparty to that parking arrangement is. From the perspective of an ordinary parker, the natural assumption is that the offer to park comes from the *owner of the lot*, not from a separate technology company operating in the background. *See, e.g., Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1200–01 (W.D. Wash. 2003) (noting that there was a contract between the lot owners and parkers but the "violation fee" was collected by a third party). In fact, even the Notices received by Plaintiffs simply state that the parking lots were "Metropolis-managed," implying that another entity owns the lots. ROA.35. Whether Metropolis owns a particular facility or instead operates it as a manager, agent, or service provider for the owner is not

21

apparent to consumers like Plaintiffs and cannot be resolved without discovery.[4]

That distinction matters because, if the implied parking contract runs between the parker and the lot owner, then any unpaid parking charge is a debt owed to another—the lot owner—and Metropolis's later efforts to collect that debt constitute the collection of debts owed to another. 15 U.S.C. § 1692a(6). Under this scenario, the only question remaining is whether Metropolis "regularly" collects these debts, a fact question beyond the reach of Rule 12(b)(6). *Williams*, 2022 WL 562896, at *4 ("Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities." (quoting *Brown v. Morris*, 243 Fed. Appx. 31, 35 (5th Cir. 2007))); *cf. Cleary v. Hertz Rent-A-Car*, No. CIV.A. 13-1824, 2013 WL 3915217, at *2 (E.D. Pa. July 29, 2013) (denying motion to dismiss on the conclusion that whether defendant met the FDCPA definition of "debt collector" "raises fact questions almost by necessity").

---

[4] Plaintiffs, as consumers, have no visibility into the contractual arrangements between Metropolis and parking-facility owners. Whether Metropolis owns a given facility outright, leases it, or operates it pursuant to a management or revenue-sharing agreement is information uniquely within Metropolis's control. Plaintiffs need not plead the contents of undisclosed contracts between Metropolis and unknown lot owners to survive dismissal. Rule 12 requires only plausible allegations that Metropolis regularly collects unpaid debts owed to others.

The Complaint thus plausibly alleges that Metropolis is acting as a vendor and debt collector for lot owners by using its technology platform to collect unpaid parking fees owed to the lot owners. ROA.9–10, 17–18, 35. At a minimum, these allegations plausibly support the inference that Metropolis "regularly collects" unpaid parking charges owed to third-party lot owners, bringing it within the FDCPA's "regularly collects" definition and required the district court to proceed to the separate question of whether Metropolis can invoke the "originator" exclusion under Plaintiffs' alternative theory.[5]

---

[5] The magistrate judge relied on photographs of signage attached to Metropolis's motion to dismiss to conclude that the terms of the parking arrangement were established as a matter of law. ROA.260–62. And the district court appeared to rely on that finding in its own order. ROA.294–99. That was improper at the pleading stage. Whether particular signs were visible, conspicuous, or even seen by Plaintiffs presents factual questions that cannot be resolved on a Rule 12(b)(6) record, particularly where the photographs were not attached to the Complaint and they are not central to Plaintiffs' allegations but are to Metropolis's defense. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (refusing to consider a report of a special commission related to the Texas A&M bonfire collapse); *J&J Sports Productions, Inc. v. Sw. Tex. Entm't, Inc.*, No. DR-17-CV-045-AM-VRG, 2019 WL 1313474, at *4 n.1 (W.D. Tex. Jan. 23, 2019), *report and recommendation adopted*, No. DR-17-CV-045-AM, 2019 WL 2565255 (W.D. Tex. Mar. 27, 2019) (stating documents which are not relied upon in and are intended solely to present a disputed factual narrative to the Complaint, are not the type of "documents" courts consider at the motion to dismiss stage).

In any event, even assuming the district court could properly consider the signage, it does not resolve the identity of the contracting counterparty. For example, at the facility where Plaintiff Frankfort parked, the signage displayed Texas Women's Hospital and HCA Healthcare branding and the logo of a separate parking operator, Premier Parking. ROA.97. Nothing on the signage conspicuously identified Metropolis as the owner of the facility or as the party with whom Frankfort was

**B.    The "originator" exclusion does not defeat this alternative theory because such debts would not be "originated" by Metropolis.**

Because Plaintiffs plausibly alleged that Metropolis regularly collects unpaid parking debts owed to others, dismissal would be improper unless Metropolis can satisfy the "originator" exclusion in Section 1692a(6)(F)(ii). It cannot, for three reasons.

*First*, as stated above, if the implied parking contract runs between the parker and the *lot owner*, then any unpaid parking charge is a debt owed to the lot owner, and it is the lot owner—not Metropolis—that would have "originated" the obligation under the district court's understanding of that term. The lot owner offers parking in exchange for payment; the parker accepts by parking. Metropolis, under this theory, functions only as a vendor, providing technology and enforcement assistance on the lot owner's behalf. In that circumstance, Metropolis cannot invoke the "originator" exclusion because it did not originate debt due to the lot owners—it merely seeks to collect it on behalf of another.

---

contracting rather than the lot owner—presumably the hospital. *See* ROA.97. At most, the signage reflects Metropolis's role in payment and enforcement. For example, the word "Metropolis" only appears in the text of a URL next to a QR code on the sign. ROA.97. That ambiguity reinforces why the question of *who* the parking fee was owed to cannot be resolved at the pleading stage and does not support dismissal.

*Second*, even if Metropolis were ultimately shown to be the party entitled to the unpaid parking fare—whether as an operator, assignee, or contracting counterparty—that still would not mean Metropolis "originated" a debt within the meaning of the statute.

Courts construe undefined statutory terms according to their plain meaning, including their "ordinary usage." *United States v. Lauderdale County*, 914 F.3d 960, 965 (5th Cir. 2019). According to the Cambridge Dictionary, "originate" in a financial context means "to arrange a new loan or investment,"[6] and to "arrange" is "to plan, prepare for, or organize something."[7] *See Thompson v. Goetzmann*, 337 F.3d 489, 497 n.20 (5th Cir. 2003) ("Dictionaries are a principal source for ascertaining the ordinary meaning of statutory language."). Planning and preparation require affirmative action on behalf of the lender and borrower. Thus, a debt is "originated" when the parties take affirmative steps to seek (on the borrower's behalf) and extend (on the creditor's behalf) credit through

---

[6] *Originate*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/originate#google_vignette (last visited Jan. 12, 2026).

[7] *Arrange*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/arrange (last visited Jan. 12, 2026).

a consensual, *intentional* transaction, such as a home mortgage, auto loan, or credit card.[8]

A failure to pay for parking does not fit that understanding. The parker does not apply for credit, request deferred payment, or enter into a lending relationship. Neither does Metropolis "plan" or "prepare" for an individual parker's transaction beyond simply installing its technology in a garage. At most, the obligation arises from an implied exchange—parking in return for payment—and is not the sort of debt a creditor "originates" as that term is ordinarily understood. *See Lauderdale County*, 914 F.3d at 965.

*Third*, even if the unpaid parking fare can be described as an "originated" debt, the "Violation Fine" itself cannot plausibly be described as a debt "originated" by Metropolis. Unlike the parking fare, the amount of the Violation Fine is never disclosed or agreed to in advance by the parker. Instead, it is unilaterally imposed in an arbitrary amount untethered to any consensual transaction.

---

[8] *See, e.g.*, *Origination*, INVESTOPEDIA (Dec. 29, 2024), https://www.investopedia.com/terms/o/origination.asp; NATIONAL CONSUMER LAW CENTER, FAIR DEBT COLLECTION PRACTICES ACT LITIGATION AND REMEDIES § 4.8.8 (11th ed. 2026) ("The term "originated" is not defined, but in common usage a debt is originated by a person where that person initially extends the credit.).

Compare the Violation Fines in this case to a fee or interest rate involved in a typical credit transaction. There, rates and fee schedules are routinely disclosed—even *advertised*—in advance and are defined in the parties' contract when they consummate the transaction. They are properly "originated" amounts. But would an undisclosed contractual fine *fourteen times* the amount of a consumer's monthly payment qualify? Characterizing an undisclosed, extracontractual penalty as a debt "originated" by Metropolis stretches that term beyond recognition and detaches it from the ordinary meaning of that word. The district court gave "originate" "an illogically broad definition" unsupported by the FDCPA's text. *See Tex. Truck Parts & Tire, Inc. v. United States*, 118 F.4th 687, 692 (5th Cir. 2024) (refusing to adopt unduly broad reading of "brings" in regulation in favor of the term's plain meaning). This was error.

At a minimum, whether (1) an unpaid parking charge or (2) the Violation Fine itself was "originated" by Metropolis is a question of fact that cannot be resolved against Plaintiffs at the pleading stage.[9] The

---

[9] In its order, the district court stated that "Plaintiffs … do not dispute that the alleged debt … originated with Defendant" and that "Plaintiffs' entire theory of the case is that the alleged debt … originated with Defendant." ROA.295–96. Respectfully, that characterization is incorrect. The issue of origination under

district court's categorical application of the "originator" exclusion therefore was error.

### C.    At a minimum, the district court should have granted leave to amend.

The district court's dismissal *with prejudice* rested on its threshold application of the § 1692a(6)(F)(ii) "originator" exclusion. By resolving the case on that basis, the district court never evaluated Plaintiffs' factual allegations nor did it identify which, if any, of those allegations were deficient. If this Court concludes that additional allegations are required on any of those points, the proper disposition is reversal with instructions to permit amendment, not affirmance of a dismissal with prejudice without allowing Plaintiffs even one chance to amend their pleadings. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often

---

§ 1692a(6)(F)(ii) was not raised by Metropolis in its motion to dismiss, was not briefed by either party, and was not conceded by Plaintiffs. As shown throughout this brief, Plaintiffs vigorously dispute whether Metropolis "originated" the alleged debt, as that term is commonly understood, and have consistently alleged facts supporting alternative theories of ownership and origination. The district court cited no authority or record support for its contrary conclusion.

28

afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case….").

## IV.   Plaintiffs alleged numerous violations of the FDCPA.

### A.   Metropolis collects amounts not authorized by agreement or permitted by law.

The FDCPA prohibits a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Plaintiffs plausibly alleged that Metropolis violated this provision by collecting the "Violation Fines" that were never agreed to and are not legally permissible otherwise.[10] ROA.10–11, 19.

Plaintiffs agree that any implied parking arrangement created by their conduct obligated them to pay the posted parking rate. *See Franklin*, 832 F.3d at 744. But they also alleged that the Violation Fines Metropolis collected were not part of any agreement. ROA.10–11, 16–19.

---

[10] After filing their original complaint, Plaintiffs learned that, in addition to the Violation Fine, Metropolis required payment of a mandatory online service fee as the sole means of satisfying the alleged debt. This "pay-to-pay" Scheme is also an independent § 1692f(1) violation. *See, e.g.*, *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1294 (11th Cir. 2025) (optional convenience fee to pay online violated FDCPA); *Alexander v. Carrington Mortg. Servs., LLC,* 23 F.4th 370, 376 (4th Cir. 2022) (convenience fee violated FDCPA). Plaintiffs intended to add these allegations but were denied leave to amend. The existence of such additional charges underscores why the district court's with-prejudice dismissal was premature.

Accepting those allegations as true, as the Court must at the Rule 12 stage, Metropolis attempted to collect amounts that were not "expressly authorized by the agreement creating the debt," which is forbidden by § 1692f(1).

Even if the Court were to look beyond the pleadings and consider the signage Metropolis attached to its motion to dismiss, the result would be the same.[11] The signs do not disclose the amount of any "fine" or "penalty." ROA.68. They merely warn that some undefined penalty may be imposed for nonpayment. ROA.68. Under Texas law, whether such a contractual penalty can be enforced as part of a contract is governed by the law of liquidated damages and penalties. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 766 (Tex. 2005) (Courts "distinguish a permissible liquidated damages clause from an unenforceable penalty."); *Phillips v. Phillips*, 820 S.W.2d 785, 789–90 (Tex. 1991) ("Enforcement of a penalty, like enforcement of an illegal contract, violates public policy.").

---

[11] Again, Plaintiffs do not concede that the district court could properly consider signage attached to Metropolis's motion to dismiss or assume that such signage formed part of any agreement at the pleading stage. Whether particular signs were visible, conspicuous, or assented to by Plaintiffs presents factual questions not resolvable on a Rule 12(b)(6) record. *See supra* n. 5. In any event, even assuming that the signage could be considered, the absence of any disclosed amount or method of calculating the "Violation Fine" renders the Violation Fine a void penalty under Texas law.

Texas permits contractual liquidated damages only where two conditions are met: (1) the harm caused by breach is difficult to estimate at the time of contracting, and (2) the amount specified in advance "is a reasonable forecast of just compensation." *Phillips*, 820 S.W.2d at 788. A fine or penalty that fails either requirement is an unenforceable penalty and void as a matter of public policy. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005).

As pleaded, the Violation Fine fails the second prong of the *Phillips* test for two reasons. *First*, no amount—or method of calculation—was disclosed or agreed to in advance. *Atrium Med. Ctr., LP v. Hous. Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020) ("[A]n enforceable liquidated damages contract provision establishes an acceptable measure of damages that parties *stipulate in advance* will be assessed in the event of a contract breach.") (emphasis added and quotation omitted); *Peake*, 178 S.W.3d at 767 (noting a "liquidated damages clause is designed to substitute a *sum agreed upon by the parties* for any actual damages suffered as a result of a breach" (quoting 24, Williston on Contracts § 65:1, at 229 (4th ed. 2002)) (emphasis added)).

*Second*, because no amount was agreed to, the Violation Fine cannot plausibly be a "reasonable forecast" of damages. *See, e.g.*, *Atrium*,

595 S.W.3d at 192, 194–96 (stating "[t]he party seeking liquidated damages bears the burden of showing that the provision, as drafted, accounts for these two considerations," then examining whether the record showed that the provision "reasonably forecast just compensation"). A fine whose amount is not decided until *after* a breach occurs cannot qualify as liquidated damages because the parties did not agree to or forecast reasonable damages at the time of contracting.

Plaintiffs' allegations reinforce that conclusion. They alleged that Metropolis imposed dramatically different Violation Fines on similarly situated consumers: Plaintiff Frankfort was assessed a $30.25 Violation Fine on a $9 parking fare for a one hour, fifty-nine-minute stay, while Plaintiff Goodban was charged a $70.25 Violation Fine on a $5 fare for a sixteen-minute stay. ROA.10. Those disparities plausibly reflect that the Violation Fine is not tied to anticipated loss, costs of collection, or any objective measure of harm, but operates as a punitive measure to increase Metropolis's revenue.

Because Plaintiffs plausibly alleged the "Violation Fine" is an unenforceable penalty under Texas law and is void as against public policy, it is not part of the agreement creating the debt. *Flores*, 185 S.W.3d at 431 ("If damages for the prospective breach of a contract are

32

difficult to measure and the stipulated damages are a reasonable estimate of actual damages, then such a provision is valid and enforceable as 'liquidated damages;' *otherwise it is void as a 'penalty'.*") (emphasis added).[12] Attempting to collect the Violation Fine therefore violates § 1692f(1). *See, e.g., Ballard v. Equifax Check Servs.*, 158 F. Supp. 2d 1163, 1174–76 (E.D. Cal. 2001) ("Because the service charge is not authorized under California law, but rather, is a void liquidated damage, [the defendant] violated 15 U.S.C. § 1692f by demanding payment of the same.").[13]

At the pleading stage, Plaintiffs were not required to prove that the Violation Fines are unenforceable penalties. They were required only to plausibly allege that Metropolis collected amounts that were not part of the agreement creating the debt and were not permitted by law. They did

---

[12] For the same reason, Metropolis presenting the Violation Fine as a part of Plaintiffs' debt misrepresents the "amount … of the debt," which is another independent FDCPA violation. *See* 15 U.S.C. § 1692e(2)(A).

[13] *See also Pollice v. Nat'l Tax Funding, LP*, 225 F.3d 379, 407 (3d Cir. 2000) (finding liability under § 1962(f) because interest and late charges exceeded state limitation of 10%); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1328 (D. Utah 1997) (finding liability under § 1962(f) because fee exceeded the state limit of $15); *Hansen*, 280 F. Supp. 2d at 1204–05 ("Ticket Track asserts that an agreement existed between each of the plaintiffs and the lot owners that allowed for the imposition of additional fees. This is evidenced by the signs posted at each lot . . . . As held above, any implied contractual provision that is contrary to the provisions of any statute is void and unenforceable. Because the contractual provision purporting to authorize the imposition of additional fees is void under state law, it cannot be implicated to show compliance with the Federal statute.").

so. Whether Metropolis can ultimately justify its penalties under Texas contract law is a merits question that cannot be resolved on a motion to dismiss.

## B.  Metropolis uses false and coercive threats to induce payment.

The FDCPA also prohibits debt collectors from threatening to take any action that cannot legally be taken or from using false or misleading representations in connection with the collection of any debt. 15 U.S.C. §§ 1692e(4), 1692e(5), 1692f(6)(A). Plaintiffs plausibly alleged that Metropolis violated these provisions by falsely misrepresenting that it could impose *additional* fees and tickets as well as threatening to seize Plaintiffs' vehicles as a consequence for not paying the Violation Fine. *See* ROA.19.

*First*, the Notices warned that failure to pay the demanded "Violation Fine" could result in "additional fees," and "future ticketing," "at the sole discretion of Metropolis." ROA.19.

Those threats are deceptive and unlawful on their face.[14] Even accepting Metropolis's position that a single "Violation Fine" is

---

[14] In evaluating whether a letter is deceptive, courts analyze the language "under an unsophisticated or least sophisticated consumer standard." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004).

authorized by the signage in its garages,[15] Metropolis has no authority—contractual or otherwise—to impose *additional* fees or *additional* "tickets" for failure to pay a prior penalty. That would amount to nothing more than Metropolis demanding payment of yet *another* violation fine for not paying the *original* Violation Fine. In other words, Metropolis is threatening to collect additional amounts based solely on nonpayment of the Violation Fine, which violates the FDCPA. *See* 15 U.S.C. § 1692f(1) (prohibiting "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."). Because Metropolis has no authority to impose these consequences, its threats to do so are false, misleading, and deceptive and are prohibited by the FDCPA. *See* 15 U.S.C. § 1692e(10) (prohibiting "the use of any false representation or deceptive means to collect or attempt to collect any debt"); *id.* § 1692e(5) (prohibiting threatening to take any action that cannot legally be taken).

---

[15] Again, Plaintiffs do not concede that the signs in Metropolis's Motion to Dismiss are incorporated into any implied parking contract nor that it is appropriate for the district court to consider the signage on a Rule 12(b)(6) motion. *See supra* n. 5.

*Second*, the same is true of the threats to boot or tow Plaintiffs' vehicles. The Notices warned that "all vehicles that fail to pay for parking violations may be subject to … booting and/or towing, at the sole discretion of Metropolis." ROA.19 As Plaintiffs allege, the Notice is generated and sent to parkers at their homes *after* they have left the Metropolis parking facility. ROA.10, 19. And it is "plainly illegal" for Metropolis to threaten to boot and tow vehicles that are not located in a Metropolis parking facility. ROA.19. Metropolis's threat to tow or boot vehicles solely for non-payment of the Violation Fine is another stand-alone violation of the FDCPA. *See* 15 U.S.C. § 1692f (6)(A) (prohibiting the threat or taking of an action to dispossess or disable property); *id.* § 1692e(4) (prohibiting the "representation or implication that nonpayment of any debt will result in . . . the seizure . . . of any property ….").

These statements were intentionally designed to coerce consumers with threats of escalating consequences; pay now or suffer worse. Plaintiffs thus plausibly alleged that Metropolis used these threats of added fees, future tickets, and vehicle seizure to pressure consumers into

paying amounts they did not even owe.[16] This coercive conduct is forbidden by the FDCPA.

## CONCLUSION

The district court dismissed Plaintiffs' FDCPA claim with prejudice based on a misapplication of the statute's "originator" exclusion and without reaching whether Plaintiffs plausibly alleged unlawful debt-collection conduct. Plaintiffs, however, adequately alleged that Metropolis is a debt collector because its business model centers on imposing and collecting unlawful penalties as well as regularly collecting debts on behalf of third-party lot owners. Plaintiffs also alleged that Metropolis collects these unauthorized amounts through threats, misrepresentations, and coercion. Those allegations state a claim under the FDCPA.

Plaintiffs were entitled to proceed past the pleading stage. But, at a minimum, Plaintiffs are entitled to amend their complaint to address any perceived deficiencies. For these reasons, the Court should reverse

---

[16] To be clear, even if Plaintiffs had owed the Violation Fines, the FDCPA prohibits coercive or misleading threats regardless of whether the underlying debt is valid. A debt collector may not threaten unauthorized actions to compel payment even of a legitimate obligation. 15 U.S.C. § 1692e (prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of *any* debt") (emphasis added).

and vacate the judgment and order dismissing the FDCPA claim and remand for further proceedings.

Dated: January 26, 2026

Respectfully submitted,

*/s/ Daniella P. Main*
Craig A. Haynes
  Texas Bar No. 09284020
  craig.haynes@vhh.law
Daniella P. Main
  Texas Bar No. 24120235
  daniella.main@vhh.law
**VARTABEDIAN HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 4600E
Dallas, TX 75201
Tel.: (469) 654-1632

Kyle Schnitzer
  Texas Bar No. 24083811
  kyle.schnitzer@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200

*Attorneys for Plaintiffs-Appellants
Todd Frankfort and Curtis Goodban,
on behalf of themselves and all others
similarly situated*

## CERTIFICATE OF SERVICE

I, Daniella P. Main, certify that today, January 26, 2026, I have caused a copy of this Appellants' Brief to be delivered by this court's ECF electronic filing system to:

David S. Coale
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201

Suyash Agrawal
Christopher M. Walling
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, IL 60602

*/s/ Daniella P. Main*
Daniella P. Main

**FORM 6. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,718 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14 point.

> */s/ Daniella P. Main*
> Daniella P. Main

Dated: January 26, 2026